IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEROME L. GRIMES,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1933-X-BH |
| | § | |
| **SANTANDER CONSUMER USA,** | § | |
| Defendant, | § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, *Defendant Santander Consumer USA's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)*, filed November 8, 2022 (doc. 12), should be **GRANTED in part** and **DENIED in part**.

### I.    BACKGROUND

Jerome L. Grimes (Plaintiff), a Louisiana resident, sues Santander Consumer USA (Defendant), a corporation with its principal place of business in Dallas, Texas, based on the alleged repossession and sale of his sports utility vehicle (SUV). (doc. 3 at 11.)[2]

According to the complaint, on March 20, 2019, Plaintiff purchased an SUV and extended warranty through a loan financed and originated by Defendant. (doc. 7 at at 9.) Under the loan agreement, he agreed to pay $510.34 per month for 72 months. (*Id.* at 14.) Around October 2021, Plaintiff took the SUV to a California repair shop after it "became inoperable," but the repair shop refused to repair it under the extended warranty. (*Id.* at 11, 14.) On October 16, 2021, Plaintiff called Defendant about the repair shop's refusal to honor the warranty and to repair the SUV. (*Id.*)

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

During that phone call, Plaintiff and Defendant's employee verbally agreed that the SUV would be "voluntarily surrendered" to Defendant for repairs and that Plaintiff would retain the "option to retrieve" it if it was repairable. (*Id.* at 11-12.) The employee did not inform Plaintiff of his right under the warranty to take the SUV to another repair shop. (*Id.* at 13.) At the time of the SUV's surrender, Plaintiff had made 36 monthly payments and the loan was not in default. (*Id.* at 14-15.) Defendant's employees eventually sold the SUV at auction. (*Id.* at 11, 20.)

Plaintiff later rented a car from an Enterprise location in California and drove the rental car to Colorado. (*Id.* at 6, 10.) On or about February 8, 2022, Plaintiff was arrested in Castle Rock, Colorado; he was subsequently convicted of aggravated motor vehicle theft and embezzlement of the rental car and incarcerated until May 4, 2022. (*Id.* at 6, 15-16.)

From January 20, 2022, to March 17, 2022, Defendant's employees falsely reported that the SUV had been "repossessed" to the four consumer credit reporting agencies, the repair shop and Enterprise car rental in California, and to the police department, district attorney's office, and municipal criminal court in Castle Rock, Colorado. (*Id.* at 5-6.) Plaintiff alleges that the employees acted maliciously to defame his credit worthiness and conspired to wrongfully defraud him of the SUV. (*Id.* at 6-7.) He alleges that Defendant's fraudulent reports damaged his criminal defense in the Colorado criminal action and prevented him from obtaining a graduate student loan to further his education. (*Id.* at 9-10.) He also alleges that Defendant breached the verbal agreement to allow him to remove the SUV from voluntary surrender status. (*Id.* at 11.)

On August 31, 2022, Plaintiff filed suit against Defendant. (*See* doc. 3.) He asserts claims for violations of the Fair Debt Collection Practices Act (FDCPA), the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the Sixth Amendment to the U.S. Constitution, and other "Civil Rights Acts against Discrimination in the Rights to Education," and state law

claims for defamation, breach of contract, negligence, vicarious liability, negligent supervision, and fraud and misrepresentation. (*See* docs. 3 at 3-4, 6-7; 7 at 2.) He seeks 3.4 million dollars in "compensatory, special, and/or punitive damages," reasonable costs of bringing this suit, and injunctive relief including "corporate reform" of Defendant. (doc. 7 at 3-4, 20-21.)

Defendant now moves to dismiss some of Plaintiff's claims. (doc. 12.)

## II.   MOTION TO DISMISS

Defendant moves to dismiss some of Plaintiff's claims under 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (*See* doc. 12.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## A.   **FDCPA**[3]

Defendant argues that Plaintiff's claim that it violated the FDCPA should be dismissed because he fails to allege that it is a "debt collector" under the Act. (*See* doc. 12 at 3-6.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)). To state a claim, a plaintiff must allege facts sufficient to show that "(1) [the plaintiff has] been the object of collection activity arising from a consumer debt; (2) the defendant is a *debt collector* defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. SKO*

---

[3]Plaintiff contends that the FDCPA is an amendment to the Consumer Credit Protection Act (CCPA) and is "sometimes used in conjunction with the Fair Credit Reporting Act." (*See* docs. 3 at 2; 7 at 2.) Because he makes no other reference to the CCPA, he does not appear to raise a claim under that statute.

4

*Brenner Am., Inc.*, No. 3:13-CV-988-D, 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013) (emphasis added).

The FDCPA defines a debt collector as "any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). There are two categories of debt collector—those who collect debts as the "principal purpose" of their business and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007). Notably, the FDCPA exempts from this definition "any person collection or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt *which was originated by such person*." 15 U.S.C. § 1692g(a)(6)(F) (emphasis added). Under this exception, courts have concluded that "[t]he term 'debt collector' does include lenders[,] ... 'the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Here, Plaintiff alleges that Defendant financed the purchase of the SUV and that it attempted to collect on that debt even though it was not in default. (doc. 7 at 14.)[4] These bare and

---

[4] Plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

conclusory allegations are insufficient to show that Defendant was either engaged "in any business the principal purpose of which [was] the collection of any debts," or that it "regularly collected or attempted to collect ... debts." *See* 15 U.S.C. § 1692a(6); *see also Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *7 (N.D. Tex. July 31, 2012), *adopted by* 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (dismissing FDCPA claims after finding that plaintiffs' recitation of the statutory language, without any facts in support, was insufficient to plausibly allege that defendants were "debt collectors"). Because Plaintiff's limited factual allegations are insufficient to state a plausible claim for relief under the FDCPA, Defendant's motion to dismiss this claim should be granted. *See Iqbal*, 556 U.S. at 678 (holding that to state a claim, a plaintiff must plead sufficient facts to make the claim "plausible on its face").

**B.    TILA**

Defendant moves to dismiss Plaintiff's TILA claim as time-barred.[5] (doc. 12 at 7.)

"The purpose of the TILA is to protect the consumer from inaccurate and unfair credit practices, and 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995) (quoting 15 U.S.C. § 1601(a)). Both TILA and Regulation Z, which was issued by the Federal Reserve Board to implement TILA, require creditors to make numerous disclosures in a credit transaction, including the amount financed, the finance charge, the total sale price, and information regarding debt cancellation. *See* 15 U.S.C. § 1639(a); 12 C.F.R. §§ 226.1(a), 226.17-18. "Concluding a credit

---

[5] Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the complaint." *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (citations omitted); *see Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (holding dismissal under Rule 12(b)(6) is proper if a successful affirmative defense appears "based on the facts pleaded and judicially noticed"); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

transaction without making the required disclosures constitutes a TILA nondisclosure violation," which occurs "when the transaction is consummated." *Val-Com Acquisitions Trust v. Bank of Am., N.A.*, No. 3:10-CV-01965-M, 2011 WL 2312284, at *2 (N.D. Tex. June 9, 2011) (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)).

"The general statute of limitations for damages claims under the TILA is one year after the violation." *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 186 (S.D. Tex. 2007), *aff'd by* 269 F. App'x 523 (5th Cir. 2008) (citing 15 U.S.C. § 1640(e)). Because "nondisclosure is not a continuing violation for purposes of the statute of limitations," this one-year period begins to run on the date the loan transaction is consummated. *Moor*, 784 F.2d at 633; *see* 15 U.S.C. § 1640(e) (providing that an action for statutory damages must be brought within one year "from the date of the occurrence of the violation"). To equitably toll the TILA statute of limitations, "a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Moor*, 784 F.2d at 633. "[M]ere nondisclosure does not provide sufficient grounds for tolling the statute of limitations." *Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012).

Here, Plaintiff alleges that he entered into an agreement with Defendant to finance the purchase of the SUV on March 20, 2019. (doc. 7 at 14.) Under the TILA, any nondisclosure violation would have occurred on that date. *See* 15 U.S.C. § 1640(e); *Williams*, 504 F. Supp.2d at 786. Accordingly, the limitations period for his TILA claim expired on March 20, 2020. Even though the limitations period under the TILA may be tolled under certain circumstances, Plaintiff has failed to allege a legal or factual basis for tolling applying equitable tolling in this case. *See Moor*, 784 F.2d at 633; *see, e.g., Val–Com*, 2011 WL 825096, at *3 (denying plaintiffs' request

for equitable tolling with respect to their nondisclosure claim because they "neither alleged, nor adduced evidence of, any conduct by [the] defendant of the type contemplated by the Fifth Circuit [in *Moor*] to warrant tolling"). Plaintiff alleges that he "relied" on Defendant's oral agreements on October 16, 2021 and January 20, 2022, of having the "option to retrieve" the SUV if it was repairable, and that he was incarcerated from February 8 to May 4, 2022, but those events were more than a year after the statutory period expired. (*See* doc. 7 at 9-10, 12, 15.) Moreover, his incarceration does not provide a basis for tolling the limitations period. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) ("[U]nder Texas law imprisonment does not toll limitations.").

Plaintiff argues that his TILA claim is not time-barred because Defendant falsely reported the SUV as repossessed to consumer credit reporting agencies on March 4, 2022 (doc. 14 at 2), but he fails to identify the provisions of the TILA that was violated by the report. *See, e.g., Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013) (dismissing TILA claim where plaintiffs' allegations failed to explain how defendant violated the TILA or to identify the particular provision of the TILA it allegedly violated). As discussed, the limitations period runs from the date of the occurrence of the violation, and "[a] violation occurs when credit is extended through the consummation of the transaction between creditor and its customer without the required disclosures being made." *Patterson v. Sierra Pac. Mortg. Co.*, No. CIV.A.3:07-CV-1601-G, 2008 WL 2596904, at *4 (N.D. Tex. July 1, 2008). Because the limitations period for his TILA claim expired before he filed this action and there are no allegations to warrant equitable tolling, the claim should be dismissed as time-barred. *See, e.g., McLean v. Big Dog Grp., LLC*, No. CV 15-40-JWD-EWD, 2016 WL 3211514, at *9 (M.D. La. Mar. 11, 2016) (dismissing TILA claims because "[t]he one-year statute of limitations period has

8

expired, and Plaintiffs do not demonstrate the facts necessary to entitle them to the doctrine of equitable tolling").

**C.   Defamation**

Defendant generally argues that Plaintiff's defamation claim must be dismissed because it is asserted as part of his FDCPA claim. and that it fails because his complaint "makes nothing but conclusory allegations to warrant relief on such a claim." (doc. 12 at 7.)

Defendant does not brief how or why the dismissal of Plaintiff's FDCPA claim impacts his defamation claim; nor does it cite to any legal authority in support of its argument.[6] *See, e.g., State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2020 WL 2812866, at *6 (N.D. Tex. May 30, 2020) (rejecting requested dismissal of claim because defendant's motion to dismiss "consists only of argument without reference to legal authority as required by Local Rule 7.1(d), and it is not incumbent on the court to make legal arguments for the parties or address issues that have not been properly briefed"). It also fails to explain how Plaintiff's allegations in support of his defamation claim fail to state a claim under 12(b)(6). *See, e.g., Du Bois v. Martin Luther King Jr. Fam. Clinic, Inc.*, No. 3:17-CV-2668-L, 2018 WL 11430901, at *2 (N.D. Tex. May 29, 2018) (explaining that "it is not incumbent on the court to determine the adequacy of Plaintiff's pleadings in the absence of factual and legal argument and authority by Defendant").

---

[6] "[T]o properly raise an argument, a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit cases." *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (citations omitted). The role of a court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes," but "to adjudicate the arguments with which [it is] presented." *In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010). The Fifth Circuit has long held that issues not sufficiently briefed are waived. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("Generally speaking, a defendant waives an issue if he fails to adequately brief it."); *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Where analysis is so deficient, this court has considered the issue waived for inadequate briefing."); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 739 n.9 (5th Cir. 1993) (failure to sufficiently brief issue constitutes waiver of issue); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). "While the 'issues-not-[adequately] briefed-are-waived rule' in these cases derives from the Federal Appellate Rules of Procedure, Local Civil Rule 7.1 similarly requires motions and responses to be "accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities.'" *Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L, 2023 WL 121996, at *4 (N.D. Tex. Jan. 6, 2023) (citing L.R. 7.1(d)).

Finally, Defendant argues that because none of the alleged defamatory statements took place in Texas, his defamation claim must be dismissed because "this Court is not the proper forum" pursuant to Tex. Civ. Prac. & Rem. Code § 15.017. (doc. 12 at 7.) Section 15.017 states that "[a] suit for damages for libel, slander, or invasion of privacy shall be brought and can only be maintained in the county in which the plaintiff resided at the time of the accrual of the cause of action, or in the county in which the defendant resided at the time of filing suit, or in the county of the residence of defendants, or any of them, *or the domicile of any corporate defendant, at the election of the plaintiff*." Tex. Civ. Prac. & Rem. Code § 15.017 (emphasis added). Even assuming that no defamatory statements were made in Texas, Defendant fails to explain why this Texas venue statute requires the dismissal of Plaintiff's defamation claim when Defendant's principal place of business is in Dallas County. Defendant's motion to dismiss the defamation claim should be denied.[7]

### III. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**, and Plaintiff's FDCPA and TILA claims should be **DISMISSED with prejudice**. Plaintiff's remaining federal law claims for violations of the FCRA, the Sixth Amendment, and other "Civil Rights Acts against Discrimination in the Rights to Education," and his state law claims for defamation, breach of contract, negligence, vicarious liability, negligent supervision, and fraud and misrepresentation remain pending.

---

[7]Defendant argues for the first time in its reply brief that Plaintiff's defamation claim fails as a matter of law because it is preempted by the FCRA (its initial brief cites the FDCPA), and that his negligence claims are subject to dismissal under the economic loss rule. (doc. 15 at 3-5.) Because the *pro se* plaintiff did not have a meaningful opportunity to respond to these new grounds for dismissal in the reply, Defendant's new arguments are not considered. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991); *see, e.g., Penn. Gen. Ins. Co. v. Story*, No. 3:03-cv-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *adopted by* 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).

**SO RECOMMENDED** on this 13th day of July, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE